Littman, please proceed. Your Honors, my name is Mark Littman. May I please court? In this, my 50th year of practicing intellectual property law, this is the first time I've had the honor and the privilege of being here. But I'm at this court at a time when there is a pall over the patent field because of patent eligibility as being imposed by the four Supreme Court cases of Bielski, Mayo, Myriad, and Alice. These are having more than just a chilling effect on patentability. It's a cryogenic effect that is killing inventive technology, inventive ideas in the field. Yes, but even if I agreed with you, which by the way I do, I'm bound by those four cases. I mean, hey, I wrote dissents in those cases, so I'm on record. Nobody is confused about what I thought should happen in those cases. Yes. But I'm bound by them, and so I have to faithfully follow them because that is my job. I agree, and I will give you a route where we can stay fully within the bounds of all four cases and come to a conclusion that they're being misapplied in the field of technology specifically represented by these claims. The objective of these decisions was a fundamental principle of patent eligibility for an abstract idea because of fear of monopolization of basic tools of science and technology. Well, instead of the rhetoric, just go to the heart of this. Why is this not an abstract idea? It's a claim to a game. All right. Like the game of blackjack. Not even on the internet. It is not claims to a rule of game. It is claims to a physical... A method of conducting a wagering game comprising... Right. ...a preamble. Physical steps. As previously stated in DICA, nothing is abstract about performing actual physical acts on physical material. Here, I was very careful in the drafting of the claims to make sure that these were physical playing cards on which physical steps of very significant impact were performed. Specifically, the first step of randomization. It may seem trivial. Shuffling the cards. Shuffling the cards is more than just a trivial event. Two articles I cited... It doesn't transform an abstract idea. It transforms the cards and it puts the abstract idea, if this were an abstract idea, and I'll get to that point, into the physical realm. It might transform the cards. I guess it changes the whole thing. This is an issue I have... But how does it transform the abstract idea of a wagering game or placing wagering with certain steps? If an abstract idea is something that can be performed by the mind, if I were up here and I'd say, let's play blackjack. You have two cards. I have two cards. I have the ace, king of spades. What do you have? You say, well, I know this game. I've got the ace, king of spades. You've invalidated the underlying principle of random events being created by physical objects in the play of the wagering game. It is the physical objects that enable the embodiment of the wagering event. I guess here's the problem. If instead of claiming blackjack using cards, if instead this was simply the well-known game of blackjack played on the internet... And then you have a generic computer executing software. Nothing. It is, in effect, I'm not going to argue... It is a generic deck of cards. You didn't invent a new deck of cards with different suits, with different numbers, with different things in them. You're using a conventional deck of cards, right? It created a new rule for blackjack. It is more than a new rule. It is a way of using those cards and the values of those cards in a new way. It has to be... It's a new rule. I'm sorry, but you can come up with thousands and thousands of games using the standard 52 deck of cards with the four suits. You're not inventing a new deck of cards. You're inventing a new way of using those cards to come up with a new game. How isn't that a quintessential abstract idea? It is not an abstract idea because it requires the physical elements of the cards themselves... the values of the cards, the determination of the cards, but the randomization is, in fact, critical in the play of this game. When N. Ray Webb came up here, the decision there was based on the fact that all he said was use cards, use a device or a table. Really looking for a physical embodiment somewhere that he could hang his hat on. That did not rise to the level of the actual fact that this is not abstract because the physical cards are required and being required to be treated with specific physical mannerism. As I said, it is a physical act and not an abstract act because of the randomization and then the subsetting of those cards in the specific physical positions in steps A, B, and C. How do you distinguish planet bingo then, which did involve at least the idea of bingo cards and bingo numbers? How do you distinguish that case? With a bingo card, all you do with a bingo card is a person puts in coin. There, he's actually transforming the card based on the physical events, but that's trivial. Here, I have to randomize the cards, which is not trivial. When you say randomize the cards, you mean shuffling, right? Yes, that is one alternative description. How different is shuffling from creating random bingo cards with different numbers in the grid? In the play of the bingo, you don't create random bingo cards. You pre-print it, you take them, you select them, and then you dob them. It's the numbers that are generated in the balls. You randomize them before you print them. You don't use the same set of bingo cards every time. Everybody gets a new card. That may be, but in the present event, the randomization is much more critical in this event. In the case I cited as an appendix 274 to 276, in Connecticut, the casinos would bring pre-randomized sets of cards to the gaming table. Those cards would be dealt out and used. In one event, the cards were not randomized. The first cards out were ace of spades, deuce of spades, three of spades, four of spades. Every player at that table knew it was not randomized. They knew the outcomes and events. They won a million and a half dollars and a single shoe. And then the casino, which had control of the cards, went to court and said, the fact of the absence of randomization was so significant that it breached the social contract and the legal contract between the player and the casino. And the casino won on that because the randomization was such a critical transformation of a set of cards as to breach those events. But you agree that the test requires that not the cards, but that the abstract idea be transformed, right? That's the test in Alice. It has to be transformation of the abstract idea, not transformation of cards. The abstract idea here is transformed by the presence of the physical cards. The patent office implied that if I transformed the individual cards rather than the entire set, it might be patentable. But to follow that logic, that would mean I would have to change the numbers in the cards after they were dealt, which would make the game illegal and absurd. It is the transformation of the set of cards that in fact is an essential step in this that renders it physical. One concept I would like to introduce, which is within the scope of the four cases and also the patent office guidelines, is what I'd like to refer to as proportionality. The objective of the four decisions was, as stated, to prevent... Can I ask you this? If we agree with you, doesn't that mean that any time somebody comes up with a new card game, with new rules, that that's patentable? Only if it's novel and unobvious. And in this case, the subject matter here was found to be novel. I'm just talking about under 101. Well, not just any card game. The way in which it's physically performed. You have to randomize the cards. Okay, let's assume that every card game, because I grew up playing card games, you always shuffle the cards before you play almost any card game that I know of. So, let's set that off the table. I don't find anything very useful about this randomization or shuffling. If we accept your logic, any time somebody comes up with a novel and non-obvious new game of cards, it's patentable in your view. That has been done, yes. And that has been done for many years. There are many significant new card games that have been introduced, and they'll either fail or succeed. But the problem is, in applying the standard of avoiding monopolization of basic scientific tools and technology, and avoiding impeding the development of science and the arts, and applying that to a different card game, is one. The use of a thermonuclear device is a mousetrap. It'll kill the mice, but it's not going to be socially useful. Can I ask you, as you can tell, we're concerned about your argument about the shuffling being transformation. Do you have another argument on what is transformation or what could be transformative in the claim? And also, you said that you were going to talk about why the claims weren't abstract. Yes. The transformative part is, as I indicated, if you did this as an abstract idea and played cards this way with mental cards, then you do truly have an abstract idea. But the physicality of the cards makes it non-abstract. And so far as transformation is concerned, it is non-abstract because it is physical cards with physical identifying features on them. They're clearly used and clearly required to be used in the claims. It is a physical event with physical materials. The only way it's abstract and therefore would be subject to the prohibition, would be in the fact that you are just inventing the numbers and everything in your head by creating a false impression of playing cards mentally. And then every game would be a tie, or every game would be a win, if you mentally select the right cards. The critical issue is the physicality of the system in that critical step of randomization, even though it does transform the abstract idea of the format in which the wager is resolved into a physical setting that makes it real. You suggested that other card games have been patented. Can you give me some examples? I mean, I know Monopoly was patented. Three card poker, four card poker, crazy four poker. Have patents been issued on all of these? I wrote them. Have they ever been upheld by this court? Not by this court, but by this time they're expired. There is even a group in the patent office of playing card games. There's an art group, a playing card game art group. Do you have to have a technical background to qualify for this job? 2711, 2717 is the art unit group. So it's got to be there. I will wait on my time for rebuttal. Thank you very much. I want to hear about this playing card game. Yeah, me too. Thank you, Judge Warren. May it please the court. It's been my impression that the PTO has sort of adopted the position that games are not going to, in general, be patent eligible post-Bilski. Is that a correct position? Games as a whole, basically any kind of card game? So even though Mr. Lipman can point to patents that issued a long time ago, that none of those would be allowed now. That's correct, Your Honor. In fact, the government argued in Bilski that things like card games should not be eligible. They should be. They should follow. I assume you mean card games using the standard deck. I mean, if you invent some kind of whole new system that doesn't use the standard 52 card deck, then maybe that might be different. That might be different, Your Honor. That deck of cards that Your Honor is referring to would not be conventional. And the agency would then go on and look at perhaps the printed matter doctrine and perhaps 102 and 103. But what does that mean? Does that mean now, just to be clear, your position is card games using a conventional deck are a non-starter. But what about, I mean, now Skipbo, Uno, you know, I mean, these are maybe not novel or whatever, but you imagine somebody came up with them today. These are card games, but based on a novel deck. Would the agency's position be that those are abstract ideas because all games, especially card games, are abstract ideas? Or is the agency's position limited to card games using a conventional deck? Well, the agency would apply the Alice test. And so it would say that a game is an abstract idea, but it would then look and see whether... Any game is an abstract idea. Any game. A set of rules for a game, yes, Your Honor. But the second step, whether or not there is something in the claim that is not conventional routine that has an inventive concept, I think something like Skipbo or Uno, at the time they were invented, might well meet that test and might escape from the Alice test in that sense. And I think, as Your Honor alluded to earlier, the USPTO has in fact changed in response to the Bilski-Mayo and Alice cases, and we are now evaluating claims differently than we used to. And we used to, pre-Alice, we used to say that a computer was enough to bring you into the physical realm and make you patent eligible. Yeah, me too. The same thing for a deck of playing cards. And now that Alice has said it's not true for a computer, we don't see a way to distinguish the playing cards from the computer. If there are no further questions, I'll yield the remainder of my time. Thank you. Again, the Patent Office has stated its position as an absolute holding that playing cards, games, or events in any format are not going to be patentable. If you look at what he says about the novel deck, all that is is different printing on cards. It used to be that the mere printed content on material would not be a basis for patentability. I mean, that might be true if it was a 52-card deck and different kind of suits or characters or things like that. But if you invent some kind of new deck that uses only 12 cards or 3,000 cards, there's all kinds of games out there that don't use standard decks. They may be invalid for other reasons, but they're not just printed matter. That goes to novelty and unobviousness, but not to abstract idea. Well, yeah, because there may be an abstract idea at the heart of them, but by creating a novel and different set of things, they're taking them out. But the problem is you have an abstract idea that you're implementing on a conventional deck of cards. I would like to get one point across, and that is going back to what the objective of the cases was, to prohibit monopolization of basic tools of science and not to impede the development of technology by allowing a patent on an abstract idea. If you look at the scope of what might be an abstract idea here, the rules, if you interpret it that way, rather than the physical method of implementing a specific physical card game, the potential for damage in monopolizing basic scientific tools is nonexistent. I would think that the weight necessary to balance that out to make it patent eligible should also be proportionately much less. Thank you very much.